18211

Menta Lee LAIL, Respondent, v. SOUTH CAROLINA STATE
HIGHWAY DEPARTMENT, Appellant

(136 S. E. (2d) 306)

*Messrs. Daniel R. McLeod, Attorney General,* and *Benjamin B. Dunlap, Assistant Attorney General,* of Columbia, and *Suggs & McCutcheon,* of Conway, *for Appellant,*

H. T. *Abbott, Esq.,* of Conway, *for Respondent,* 

May 12, 1964.

BUSSEY, Justice.

In this action plaintiff-respondent seeks to recover from defendant-appellant for surface water damages to her house and lot located at Surside Beach in Horry County, South Carolina, which damages were alleged to have been caused by the acts of the defendant in the course of certain construction work in the improvement of U. S. Highway No. 17, in the years 1960 and 1961, it being contended that the actions of the defendant constituted a taking without just compensation therefor, in violation of Section 17, Article I of the Constitution of South Carolina. From a verdict of the jury favorable to the plaintiff in the sum of $3,500.00, and an order of the trial judge denying motions for a new trial and for judgment *non obstante veredicto,* the defendant appeals.

The plaintiff acquired Lot 3, Block 10, Ocean Terrace Section of Surfside and built a home thereon about May, 1958. U. S. Highway No. 17, in that vicinity, runs in a

general northeasterly and southwesterly direction and Surfside Beach lies to the southeast of the highway between the highway and the Atlantic Ocean. To the northwest of the highway there is a bay or swamp area and the natural drainage from at least a portion of this bay or swamp area was, and still is, across the right of way of Highway 17, in the direction of the Atlantic Ocean. Long before this controversy arose, there was a thirty-six inch concrete pipe carrying the natural drainage from the bay or swamp area under Highway 17 to the southeast side thereof, from which point, according to a topographical map in evidence, the natural drainage followed an old branch or run in a meandering southeasterly direction toward the ocean. Much of the bay of swamp area in question drains away from Highway 17 rather than under it. A canal was dug in the year 1953, commencing at a point in the swamp or bay area about eight hundred feet northwest of the highway, which thereafter carried the water from that area off in a northerly direction away from the highway. Said canal was not constructed by defendant.

The section of Surfside in which plaintiff's property is located was laid out and subdivided in the year 1954. A contour survey of the area and the aforesaid map were made at that time, and in order to take care of the drainage, a ditch was dug, by the developer, from a point connecting with the aforesaid culvert, or concrete pipe, on the southeast side of the highway and running thence through the subdivision in the direction of the ocean. This ditch averaged three and a half to four feet in depth and was approximately three feet wide at the bottom. It was so constructed as to follow in general the run of the natural branch, but actually went along lot lines and streets in the subdivision. This main drainage ditch intersects with a rear corner of plaintiff's lot; runs across the rear end of the lot and then down the side of the lot to the street line, under which street there is a pipe. The map and the testimony of the surveyor who made it show that the run of the old branch

went diagonally across plaintiff's lot from rear to front. By the scale of the map, it appears that the said ditch from the highway to the corner where it first touches plaintiff's property, runs a distance of approximately 2,300 feet, or slightly less than one-half mile. Between the property of the plaintiff and the highway, three other lateral drainage ditches, constructed by the subdivider, emptied into the main ditch which runs along the line of plaintiff's property. The map indicates that the ditch, which passes plaintiff's property, is the natural drainage course for approximately 2,750,000 square feet of Surfside lying between plaintiff's property and the highway.

During 1960 and 1961, the defendant dual-laned Highway 17 in that area, in the course of which the existing highway was widened by four feet on the northwest side thereof, this widened roadway now serving as north bound lanes. To the northwest thereof was constructed two south-bound lanes, the new portion of the paved highway being inferentially, twenty-four feet in width. To the northwest of the southbound roadway there was constructed a front-age road, the width of the pavement thereon being twenty feet. In the course of this construction work no change was made in the grade of the old portion of the highway, nor was any change made in the size of the culvert. The culvert, however, was fifty feet in length prior to the new construction and an additional one hundred fourteen feet of culvert, of the same size pipe, was extended to the northwest to accommodate the drainage under the new southbound highway and the frontage road to the northwest thereof. The grade of the newly constructed southbound lanes and the frontage road were both constructed in accordance with the existing grade of the old highway, except that the frontage road was slightly lower than the main roadways.

Surfside lies between Murrells Inlet and Myrtle Beach and the grade of the old, as well as the new, highway construction was such that the grade break in the direction of Myrtle Beach, from which water drained in the direction

of the culvert, was 1,466 feet away and on the Murrells Inlet side the grade break was seven hundred thirty-four feet from the culvert. Reference to the topographical map in evidence shows that the aforesaid grade breaks corresponded with the natural grade breaks of the terrain.

The width of the old right of way prior to 1960 was seventy-five feet, and for the purpose of the new construction defendant acquired an additional right of way, to the northwest of the old right of way, one hundred twelve feet in width. There being a distance of 2,200 feet between the grade breaks, it follows that the old right of way contained 165,000 square feet and the new right of way contained approximately 246,400 square feet, within the watershed naturally drained by the run which formerly ran across the plaintiff's lot and now drained by the ditch by her property.

While there is no evidence in the record as to the precise portion of the bay area to the northwest of Highway 17 naturally drained by the culvert under the highway and the ditch going by plaintiff's property, one of her witnesses approximated such area as being one-half square mile, he, however, not professing any exact or precise information thereabout. If we assume that the grade breaks in the area immediately adjacent to the highway to the northwest are approximately the same as the rest of the terrain, and that the grade break to the northwest of the highway back in the swamp or bay is in the vicinity of the head of the drainage canal which runs away from the highway, such would mean that approximately 1,760,000 square feet of the bay area naturally drains, and since 1953 has drained, underneath the highway and in the direction of the Atlantic Ocean by plaintiff's property.

A recapitulation of the foregoing indicates that the total area naturally draining into the ditch along plaintiff's property line is approximately as follows:

| Surfside | 2,750,000 square feet |
|---|---|
| Bay or swamp area | 1,760,000 square feet |
| Old right of way | 165,000 square feet |
| New right of way | 246,400 square feet |
| Total | 4,921,400 square feet |

In view of the undisputed evidence with respect to the location of the canal in the swamp area, we think the estimate of plaintiff's witness with respect to approximately one-half square mile of the swamp area draining toward and under the highway is excessive, inaccurate and unreasonable, but, if we assume it to be correct, such would not be helpful to plaintiff as under his estimate the total area which naturally drained toward plaintiff's property would be vastly greater than the area arrived at in the foregoing recapitulation.

Between 1954 and July, 1960, the section of Surfside in which plaintiff's property is located was developed with the building of many houses therein, the exact number not appearing in the record. The building of houses, the construction of streets, and the lateral drainage ditches by the subdivider (hereinabove referred to) naturally increased the rate of flow-off in probably one-half or more of the drainage area served by the main ditch in question.

The grading in connection with the new highway construction was commenced in March, 1960. The grading and the extension of the culvert pipe was completed in April, 1960. In connection with the construction work the defendant constructed two catch basins in the median strips in the vicinity of the culvert; one being between the frontage road and the southbound roadway, and one between the northbound and southbound roadways. Inferentially, the catch basins were also completed in April, 1960. The purpose of these catch basins was to provide drainage for the median areas, to carry the water therefrom into the culvert, and to prevent the culvert from filling up with sand.

Thereafter, nothing of any consequence was done in connection with the highway construction work until October of the same year. Exactly when the pavement of the new roadway was laid does not appear in the record, but it seems clear that such took place subsequent to October, 1960.

At no time did the defendant by its construction increase the area which naturally drained toward and by plaintiff's property in July, 1960, which is the crucial time in this case. The only thing that the defendant had then done in the vicinity was to change the grade to some extent in approximately one-twentieth of the total drainage area involved, at a point approximately a half mile from the plaintiff's property, by the grading of the roadbeds, shoulders, etc., between the aforesaid grade breaks. No pavement had yet been laid to prevent the natural absorption of rainwater in the ground. Although the culvert had been extended in length, it had not been increased in size. The sloping of the shoulders to the new roadbeds toward the median areas or ditches along the sides thereof and the disturbance of vegetation, of course, had a natural tendency to increase the rate of flow-off within that particular area, but the extent of such increase does not appear in the record. Except for this increased rate of flow-off, nothing was added to the volume of water which normally and naturally passed through the culvert, nor to the volume of water which ultimately flowed by plaintiff's property a half mile away.

Records of the United States Weather Bureau reflect that on July 29, 1960, tropical storm Brenda moved in a northeasterly direction a short distance off the shoreline of South Carolina, which movement was marked by heavy and excessive rains along the coastal plains, as well as many of the central areas of this state; that there was little damage from winds and tides, but that shallow flooding occurred in the extreme eastern portion of the state from the effects of heavy storm rains. Conway, South Carolina, fifteen miles inland from the coast, registered eight inches of rain prior to and during the passage of Brenda. Within

a forty-eight hour period accompanied by the passage of Brenda, there occurred at Brookgreen, a few miles to the south of the location here involved, rainfall in excess of five inches.

There is in the record no evidence of any probative value which is in conflict with the foregoing history of the construction and development within the area, or in conflict with the engineering, scientific and record facts stated. We come, however, to the issues which are in dispute.

At some unspecified date in July, 1960, plaintiff sustained damage of consequence to her property when the drainage ditch adjacent to her property overflowed and water came well up into her house. The extent, however, of her damage on that occasion is in sharp conflict, plaintiff contending that her property was worth in excess of $12,000.00 before such time, and that it thereafter was worth only about half as much. She offered no evidence as to cost of repairs, nor the testimony of any expert as to any depreciation in value; giving only her opinion that it was worth only half as much after the water damage. To the contrary, evidence of the defendant was to the effect that her damages were in the hundreds of dollars rather than the thousands.

There was evidence on behalf of the plaintiff to the effect that subsequent to July, 1960, and even up until the time of the trial, her yard, although not her house, was still being flooded from time to time by the overflow of the ditch. She, however, made no effort to separate any damage thus caused from the damages sustained in July, 1960, and the only reasonable inference from the record is that the principal damages sustained by the plaintiff, for which she here seeks to recover, were sustained in July, 1960, concurrently with the passage of Hurricane Brenda and the accompanying excessive rainfall.

It is plaintiff's theory and contention that her damage resulted from the defendant causing surface waters to be collected from a vast area, and then

cast off in a concentrated form and volume into the drainage ditch leading to and by plaintiff's property. Applicable to such contention, we quote the following from *Owens v. South Carolina State Highway Department,* 239 S. C. 44, 121 S. E. (2d) 240:

"The Constitution of this State, Article I, Section 17, provides, that '* * * private property shall not be taken * * * for public use without just compensation being first made therefor.' In the construction of this Article of our Constitution, we do not recognize a distinction between 'taking' and 'damaging.' A deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it, and is as much a 'taking' as though the property was actually appropriated. *Webb v. Greenwood County,* 229 S. C. 267, 92 S. E. (2d) 688; *Early et al. v. South Carolina Public Service Authority,* 228 S. C. 392, 90 S. E. (2d) 472; *Chick Springs Water Company v. State Highway Department,* 159 S. C. 481, 157 S. E. 842 and *Milhous v. State Highway Department,* 194 S. C. 33, 8 S. E. (2d) 852, 128 A. L. R. 1186."

The burden of proof, however, was upon the plaintiff to show that the defendant constructed the highway improvement in question in such a manner as to cause the impounding of waters and the casting of such upon her property, bringing about the damaging or taking of such. *Owens v. South Carolina State Highway Department, supra.*

While there are other issues raised by the appeal, the principal issue to be here determined is whether or not the trial judge should have directed a verdict in favor of the defendant. In passing upon this question, it is well settled that the evidence must be viewed in the light most favorable to the plaintiff, and if more than one reasonable inference can be drawn from the evidence or if the inferences to be drawn therefrom are in doubt, the case was properly submitted to the jury. However, if the only reasonable inference to be drawn from all of the evidence

is that the plaintiff failed to prove the case alleged, it was the duty of the trial judge to direct a verdict against plaintiff.

The real question then is whether all of the evidence, viewed in the light most favorable to plaintiff, is susceptible of a reasonable inference that the damages sustained by the plaintiff were caused by the defendant to such extent, or in such manner, as to constitute a taking within the meaning of the Constitution.

While there are many decisions of this court dealing with damages resulting from the collection and casting off of surface waters by a public entity, none of them which has come to our attention sets forth any comprehensive rule as to the causal connection or relationship between the acts of the public entity and the resulting damage necessary to sustain a recovery under the Constitution. In *Baynham v. State Highway Department of South Carolina,* 181 S. C. 435, 187 S. E. 528, the court held that it was for the jury to determine whether or not the construction by the highway department was "the real factor, or at least a participating one," in bringing about the damage to or destruction of plaintiff's property. Except for the quoted language, however, that decision is not here helpful because the facts there were essentially different.

While this is not a negligence case, by analogy we call attention to the definition of proximate cause in negligence cases. Such is normally defined as the real cause, the efficient cause, the direct cause without which the injury or damage would not have been sustained.

In any event, we think that the proper test to be here applied as to causal connection is whether or not the damages sustained by the plaintiff would have been sustained had it not been for the construction work done by the defendant. In support of her contention as to the cause of her damage, plaintiff and several other witnesses testified that the drainage ditch in question was quite

adequate prior to the highway construction of 1960, and that she had had no trouble with water prior to July, 1960. Plaintiff, however, offered no evidence of probative value tending to refute the engineering facts hereinabove set forth, and no evidence going to show either the actual or even approximate increase in the rate of flow-off in the relatively small portion of the total drainage area affected by the construction work.

The record, including photographs offered in evidence by both plaintiff and defendant, reflects that the drainage ditches, in the area of Surfside involved here, received scant maintenance or attention since they were originally constructed in the year 1954. The main drainage ditch above, below and alongside plaintiff's property was far from being in the best of condition in either July, 1960, or at the time of trial. With commendable frankness, plaintiff herself admitted that she had not attempted to maintain the ditch in the vicinity of her property. Her lot is a low-lying one and had to be filled before she could build thereon. The ditches without being properly maintained naturally became less adequate as a result of the accumulation of vegetation and sediment between the date of their construction and July, 1960.

The defendant in improving the highway had no duty to provide perfect drainage in the area and was bound to furnish drainage only at least equal in capacity and efficiency to that existing prior to the reconstruction of the highway. *Milhous v. State Highway Department, supra.* Here there was no change in the capacity of the drainage and no addition to the area to be drained. The only change in efficiency, if it be regarded as such, was a natural, but not precisely determined or proved, increase in the rate of flow-off in approximately one-twentieth of the natural watershed draining toward and by plaintiff's property. Such occurred in an area a half mile away from plaintiff's property. Under all of the circumstances, we think that any causal bearing that such may have had on plain-

tiff's water problem and her resulting damage is, to say the least, remote, insignificant and speculative.

On the other hand, when we consider all of the circumstances reflected by the record, including the large area which the ditch by plaintiff's property naturally drained, the building up of Surfside with the increased rate of flow-off in approximately one-half of the drainage area served by the ditch, the lateral ditches constructed by the sub-divider, the poor state of repair and maintenance of the ditches in the subdivision, and the passage of Brenda with excessive rainfall, we conclude that the evidence, taken as a whole, is susceptible of no other reasonable inference than that the damages sustained by the plaintiff would have been sustained anyway, independently of the construction work by the defendant.

We, hence, conclude that the plaintiff has not sustained the burden of proving that the defendant caused or brought about the damages which she sustained. We think the trial judge should have directed a verdict and, hence, it becomes unnecessary to pass upon the other questions raised on appeal. Accordingly, the judgment below is reversed and the cause remanded for entry of judgment in favor of the defendant.

Reversed and remanded.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.