0819

APERM OF SOUTH CAROLINA, A South Carolina Limited Partnership, Respondent v. Alvin R. ROOF, Appellant.

(351 S. E. (2d) 171)

Court of Appeals

*W. N. Moore, Jr.*, Columbia, *for appellant.*

*Robert F. Fuller, Hyman S. Rubin, Jr.*, both of *McDonald, McKenzie, Fuller, Rubin & Miller*, Columbia, *for respondent.*

Heard Oct. 14, 1986.

Decided Nov. 17, 1986.

CURETON, Judge:

Aperm of South Carolina, A Limited Partnership (Aperm), filed a breach of contract action against Alvin R. Roof to recover royalty payments due it under a license agreement. Roof defended, alleging that there was no contract with Aperm to pay royalties. The trial court found a contract and ordered Roof to pay Aperm accrued royalties. We affirm.

The sole issue presented in this appeal is whether a valid contract to pay royalties existed between Aperm and Roof after December 31, 1981, or whether the contract had been previously terminated by Aperm. We hold that a valid royalties contract existed. Roof's second exception claims error by the trial judge in ordering him to pay Aperm royalties because the product "Aperm" was manufactured by a third party, Aperm Southeast, Inc. (Southeast). It is clear from his brief, however, that his real argument is that the license was assigned by him to Southeast, so that if Aperm has a contract it is with Southeast, not him.

Aperm, the owner of a roof coating composition and application method, entered into an option agreement with Roof on June 18, 1980 granting to Roof the exclusive license to research, develop, manufacture and sell the invention named "Aperm." The license agreement specified that Roof had the option, after conducting preliminary tests to determine the marketability of the product, of terminating the agreement between June 18, 1980 and August 1, 1980. If Roof failed to give written notice of termination by August 1, 1980, the license agreement would become "fixed" and the parties would be governed by its terms. The contract provided for a start-up period of a year during which time minimum royalties of $2,400.00 per month were to be paid by Roof to Aperm.

By August 1, 1981, Roof was required to present to Aperm a comprehensive manufacturing and marketing program in comformity with guidelines set forth in the agreement. The program was also required to include minimum royalty payments of $4,800.00 per month during the period August 1, 1981 to July 31, 1982, and increased monthly royalty payments thereafter. The marketing and manufacturing program was subject to Aperm's approval, but disapproval had to be reasonably related to the guidelines set out. The contract stated specifically that if the program provided for the

minimum royalties, then objections to the program by Aperm would be subject to arbitration, but if the program failed to provide for minimum royalties, Aperm could cancel the contract.

The agreement also provided that the license was *personal* (emphasis added) to Roof and that assignment of the license was prohibited absent prior written consent by Aperm. In the event of an assignment, the assignee, would be required to assume all of Roof's obligations under the license agreement. Roof had the right to terminate the agreement on December 31, 1980, and each year thereafter by giving written notice to Aperm by December 1 of the year in which termination was desired. Otherwise, the agreement would be automatically renewed each year provided Roof was not in default of any of the agreement's terms and conditions.

In August 1980, counsel for Roof notified Aperm by letter that Roof had "exercised his rights" under the agreement and was proceeding "to Phase I, i.e., further testing and marketing of Aperm."

By letter of August 7, 1981, Aperm notified Roof that he was seriously in default under the terms of the license agreement because he had failed to pay the required royalties and furnish it with a manufacturing and marketing program. The letter also advised Roof that the license would be terminated in thirty days if the defaults were not cured. As a result, the parties entered into an agreement on September 3, 1981 which confirmed the continuation of the license agreement and provided, *inter alia*, for payment of commissions and extension of the time for submission of the manufacturing and marketing program until December 31, 1981.

On January 28, 1982, Aperm forwarded another notice to terminate in consequence of Roof's failure to pay royalties and for other violations of the license agreement. After this notice, both royalty payments and a marketing program were presented to Aperm, but were refused because both were deemed inadequate. After this notice was sent, much correspondence passed between Aperm, Roof, and Southeast,[1] but no consensus was ever reached regarding the

---

[1] The exact legal relationship between Roof and Aperm Southeast is not evident from the record.

manufacturing and marketing program. In the meantime, Roof and/or Southeast continued to manufacture and sell the product. On August 11, 1982, Aperm wrote to Southeast's attorney advising him that the license would be terminated in thirty days.

The trial judge found that in August 1980, Roof exercised his right to transform the option contract into a "fixed" contract. He further found that "there was a continuing acknowledgement by [Roof] of the fixed contract with its minimum royalties of $4,800.00 per month, notwithstanding [Roof's] repeated entreaties for a modification thereof." The judge also found that the actual termination of the contract occurred on August 11, 1982 effective September 11, 1982. He additionally found Roof owed Aperm minimum royalties of $4,800.00 per month from January through September 11, 1982. He further found that Roof continued to sell the product through the middle of November 1982, and that Aperm was entitled to an accounting for royalties through that date. He entered judgment for Aperm in the amount of $50,400.00

In an action at law, the trial court's findings of fact will not be disturbed on appeal if there is any evidence to support those findings. *Southeastern PVC Pipe Mfg., Inc. v. Rothrock Construction Co., Inc.*, 280 S. C. 498, 313 S. E. (2d) 50 (Ct. App. 1984).

Roof argues in his brief that he contracted with South Carolina Aperm Associates, a General Partnership, not Aperm of South Carolina, A Limited Partnership. He argues that any assignment of contract rights by the General to the Limited Partnership was in violation of the license agreement and thus Aperm does not have standing to sue in this action. This issue was neither argued before the trial court nor is there an exception that addresses it on appeal. Where the record does not reflect that a point has been raised before the trial court, that point cannot be considered on appeal. *Murphy v. Hagan*, 275 S. C. 334, 271 S. E. (2d) 311 (1980). We therefore will not address this claim.

Roof next argues that after the license agreement start-up period ended on August 1, 1981, there was then no subsisting contract between him and Aperm

because the 1980 option agreement was simply an agreement to enter into a contract after the start-up period, and was therefore unenforceable, citing *McLaurin v. Hamer*, 165 S. C. 411, 164 S. E. (2d) (1932). We disagree. Neither party contends the license agreement is ambiguous. In the absence of fraud, the construction of a clear and unambiguous contract is a matter of law. *Watts v. Monarch Builders Inc.*, 272 S. C. 517, 252 S. E. (2d) 889 (1979). As we interpret the license agreement, after Roof exercised his option the parties entered into a continuing contract with a requirement that Roof submit a manufacturing and marketing program in accordance with guidelines set out in the agreement. Of course, for a contract to be binding material terms cannot be left for future settlement. *McLaurin v. Hamer, supra.* However, absolute certainty is not required, but only reasonable certainty. 17 Am. Jur. (2d) *Contracts* Section 76 (1964). A contract will not be held unenforceable for indefiniteness because its performance is, as to particular details, left open to subsequent agreement of the parties. *Touche Ross & Co. v. DASD Corp.*, 162 Ga. App. 438, 292 S. E. (2d) 84 (1982). This is especially true where the contract provides the guidelines for the subsequent agreement. 17 Am. Jur. (2d) *Contracts* Section 77 (1964).

The agreement provides that if the marketing program Roof was to present contained the agreed minimum royalty provisions, then Aperm would agree to arbitrate the other terms of the program, otherwise, Aperm could elect to terminate the agreement.[2] It is therefore evident that the *sine qua non* of the agreement was to insure that Aperm received minimum royalties. Moreover, the September 1981 interim agreement continued the license agreement without limitation as to time. It is clear from the evidence in the record that all parties considered the agreement in effect after December 31, 1981, and that Aperm waived the effect of all termination notices prior to the August 11, 1982 notice. We find evidence to support the trial

---

[2] The agreement also provides that if any provision of the agreement should prove to be unenforceable, this will not affect the enforceability of other provisions of the agreement.

judge's ruling that a contract existed after December 31, 1984.

Roof next argues that the license agreement was effectively assigned and assumed by Southeast. In the record, there is no indication of a written assignment or an assumption agreement between Roof and Southeast, nor is there any evidence that Aperm consented to Roof's assignment of his rights to Southeast or to an assumption by Southeast of Roof's obligations to Aperm under the contract. The agreement sets out in clear and unambiguous language that an assignment and assumption must be in writing and consented to by Aperm. That was not done here. Roof argues correspondence and dealings between Aperm and Southeast regarding both the marketing of the product and the payment of royalties amount to Aperm's acceptance of an oral assignment of the license agreement to Southeast. First, Roof does not direct our attention to the definitive testimony of an oral assignment in the record. Secondly, while Roof cites the case of *Barron v. Williams*, 58 S. C. 280, 283, 36 S. E. 561, 562 (1900) for the proposition that a contract may be orally assigned, the case sets forth an important exception as follow:

> We may add that a policy of insurance, like any other chose in action, may be transferred by parol, unless some unwaived provision in the policy forbids it. We find nothing in the policy forbidding such a transfer.

In this case, specific contract provisions prohibited a transfer of the license agreement without the written consent of Aperm. Moreover, Roof did not argue waiver or estoppel before the trial court or in this appeal.

Accordingly, the order of the trial court is affirmed.

BELL and GOOLSBY, JJ., concur.