## 1130

Denise R. PATTERSON, Respondent-Appellant v. I. H. SERVICES, INC., a corporation, Appellant-Respondent.

(368 S. E. (2d) 215)

Court of Appeals

*Jack H. Tedards, Jr.,* and *Thomas L. Stephenson, Leatherwood, Walker, Todd and Mann,* Greenville, *for appellant-respondent.*

*William L. Dodson, Jr.,* Greenville, *for respondent-appellant.*

Heard Feb. 22, 1988.

Decided April 4, 1988.

GOOLSBY, Judge:

This action by Denise R. Patterson against I. H. Services, Inc., arises out of Patterson's allegedly wrongful discharge from employment. The trial judge, sitting without a jury, denied Patterson relief under the Victim's and Witness's Bill of Rights Act, South Carolina Code of Laws §§ 16-3-1510 *et seq.* (1976), but awarded her actual damages in the

amount of $6,968 under the statute that creates a civil action for dismissal of an employee who complies with a subpoena, South Carolina Code of Laws § 41-1-70 (1976) (Cum. Supp. 1987). Both parties appeal. We affirm.

The questions presented by I. H. Services relate to the sufficiency of the evidence to support the trial judge's finding that Patterson was wrongfully discharged from her employment, to the sufficiency of the evidence to support an award of actual damages equaling 52 weeks' wages, and to the exclusion of certain evidence challenged as hearsay. The questions presented by Patterson involve the trial judge's finding that the Victim's and Witness's Bill of Rights Act does not create a private cause of action and his finding that a violation of Section 41-1-70 does not allow for the recovery of punitive damages. We affirm.

I. H. Services contracts with businesses and manufacturers to provide janitorial services. It employed Patterson in early April, 1985, to work as a sweeper on the third shift at the Estes Plant of J. P. Stevens, Inc., in Piedmont, South Carolina. When she was hired, Patterson informed her immediate supervisor she might be absent from her job in order to testify as a material witness in an upcoming criminal trial.

Patterson later received subpoenas from both the state and the defendant to appear at the trial. She delivered both subpoenas to Miles Pearson, her immediate supervisor. He excused Patterson from work so that she could appear in court.

Patterson missed only one day of work because of the trial, April 30, 1985.

When Patterson came to work the next day, Pearson dismissed her from employment. He acted on orders from his supervisor. I. H. Services, however, reinstated Patterson on May 2, 1985, after the Solicitor's office intervened on her behalf.

Patterson's reinstatement with I. H. Services lasted only briefly. Her employment ended again on the evening of May 4, 1985.

She thereafter brought the instant action, alleging I. H. Services dismissed her from employment because she complied with a subpoena. I. H. Services answered, alleging Pat-

terson was discharged because she was absent from work and not because she complied with a subpoena.

## I.
### A.

I. H. Services argues the trial judge erred in finding that the evidence supported Patterson's contention that she was discharged from employment on the night of May 4, 1985. It contends Patterson's account of her firing is entirely lacking in probative value in that it could not possibly have happened in the way she claimed.

Since this is an action at law tried by the trial judge without a jury, his findings of fact have the force and effect of a jury verdict and are conclusive upon appeal when supported by competent evidence. *Southeastern P.V.C. Pipe Manufacturing, Inc. v. Rothrock Construction Company, Inc.*, 280 S. C. 498, 313 S. E. (2d) 50 (Ct. App. 1984). In a case like the instant one, we cannot weigh the evidence. *Id.* The most we can do is to determine whether there is any evidence that reasonably supports the factual findings of the trial judge. *Aperm of South Carolina v. Roof*, 290 S. C. 442, 351 S. E. (2d) 171 (Ct. App. 1986).

The record, we have determined, contains evidence that reasonably supports the trial judge's finding of fact that I. H. Services discharged Patterson from her employment on the night of May 4, 1985.

Patterson herself testified Jimmy Adams, the second shift supervisor, fired her in I. H. Services offices inside the Estes Plant when she reported to work that evening. She stated Adams told her in the presence of her immediate supervisor, Debbie Davis, that she was "on layoff." After being informed of this, Patterson testified she said, "Thank you," turned around, and left. She also testified she "was just in there and out."

Adams and Davis, however, disputed Patterson's testimony. Adams denied telling Patterson she had been laid off. He further testified Patterson did not report for work that evening, at least not while he was there. Davis denied seeing Patterson at all.

The guard's sign-in sheet corroborates Davis' testimony in that it shows Patterson leaving the plant at 11:13 p.m. and

Davis not arriving at the plant until 11:45 p.m. Patterson did not contest the accuracy of the sign-in sheet.

I. H. Services bases its argument that Patterson's account of her firing is entirely lacking in probative value on the guard's sign-in sheet, on estimates regarding the distance between the main gate and the parking lot where Patterson would be expected to park her car, and on estimates regarding the amount of time it takes to travel from the main gate to the parking lot, get out of the car, walk from the parking lot to I. H. Services' office inside the plant, confer with someone in the office, walk back to the parking lot, get back into the car, and return to the main gate.

The sign-in sheet shows Patterson was about the grounds of her workplace only eight minutes on the night in question. Estimates offered by I. H. Services' witnesses indicated the round trip from the main gate to the office would take anywhere from 20 to 30 minutes and the distance from the main gate to the parking lot is between one-fourth and three-fourths of a mile.

I. H. Services maintains it would be impossible for Patterson to make the round trip from the main gate to the office, do everything she said she did, and be discharged by Adams in only eight minutes. In support of its argument, I. H. Services relies upon *Lail v. South Carolina State Highway Department*, 244 S. C. 237, 136 S. E. (2d) 306 (1964), and *Still v. Hampton and Branchville Railroad*, 258 S. C. 416, 189 S. E. (2d) 15 (1972).

Both *Lail* and *Still*, however, differ considerably from the instant action.

In *Lail*, testimony relied upon by the plaintiff to establish liability was inconsistent with incontrovertible physical facts and therefore lacked probative value. In *Still*, the plaintiff's testimony as to liability lacked probative value because it was contrary to common knowledge.

Here, neither objective nor scientific evidence offered by I. H. Services nor common knowledge render inherently incredible Patterson's testimony that she was discharged on the evening of May 4, 1985. *See Parker v. Davis*, 221 Va. 299, 269 S. E. (2d) 377 (1980) (oral evidence is overcome only when the physical facts are such that they demonstrate the oral evidence is incredible); *Florida Power Corp. v. Willis*,

112 So. (2d) 15, 20 (Fla. Dist. Ct. App. 1959), *cert. denied*, 115 So. (2d) 6 (Fla. 1959) and 115 So. (2d) 416 (Fla. 1959) ("It is a sound rule that when physical situations or matters of common knowledge point so certainly to the truth as to leave no room for a contrary determination, based on reason and common sense, such physical situation and reasonable probabilities are not affected by sworn testimony which, in mere words, conflicts therewith."); 30 Am. Jur. (2d) *Evidence* § 1985 at 239 (1967) ("[T]he probative value of the testimony of witnesses is not destroyed by physical facts unless the facts are such as to permit of but one interpretation."). Obviously, the question of how quickly Patterson was able to reach her work area after leaving the main gate, confer with Adams, and return to the main gate on the evening in question is a matter that depended on many variables.

At most, Patterson's testimony is implausible; however, "[t]he mere fact that testimony given by a witness in support of an issue is not plausible does not necessarily destroy all probative value of the testimony." *Id.* at 237; *see Kirby v. Moehlman*, 182 Va. 876, 30 S. E. (2d) 548 (1944) (simply because the testimony of a witness on which a verdict is based is not plausible will not suffice to justify the court pronouncing as a matter of law that the testimony is manifestly untrue or inherently incredible).

## B.
### 1.

I. H. Services asserts the trial judge erred in awarding Patterson pursuant to Section 41-1-70[1] actual damages equaling 52 weeks' lost wages "when the evidence showed that she lost no more than three months'

---

[1] Section 41-1-70 provides in part as follows:

> Any employer who dismisses ... an employee because the employee complies with a valid subpoena to testify in a court proceeding ... is subject to a civil action in the circuit court for damages caused by the dismissal....
>
> Damages for dismissal are limited to no more than one year's salary or [52] weeks of wages based on a [40-hour] week in the amount the employee was receiving at the time of receipt of the subpoena.

wages as a result of her job termination."[2] I. H. Services maintains the only reasonable inference to be drawn from the evidence is that Patterson would have lost her job in July, 1985, when I. H. Services lost its contract with J. P. Stevens to provide janitorial services at the latter's Estes Plant.

Although there is evidence from which the trial judge could have concluded that Patterson would have been discharged in July, 1985, when I. H. Services lost its contract to service J. P. Stevens' Estes Plant, there is also evidence that reasonably supports his conclusion that Patterson would not have been discharged at that time.

I. H. Services is, as we noted earlier, a janitorial service employing over 2,000 workers. Patterson was employed as a sweeper, *i.e.*, a person who "sweep[s] up and haul[s] the waste and weigh[s] it." She performed her duties well, according to one supervisor. Patterson worked for minimum wage, as did Davis who, as we also noted earlier, was Patterson's immediate supervisor. When I. H. Services lost its contract with J. P. Stevens, I. H. Services transferred Davis to another plant where she continued her employment with I. H. Services. The trial judge could reasonably have inferred from this evidence that Patterson also would have been transferred to another location and remained employed by I. H. Services.

The fact that Davis worked as a supervisor and Patterson worked as a sweeper is not controlling, considering Patterson's job performance, the fact that both a sweeper and a supervisor of sweepers earn only the minimum wage, the large number of people I. H. Services regularly employs in its business, and the lack of technical skill needed to be a sweeper.

Moreover, the burden of proof on this issue rested with I. H. Services to establish by a preponderance of the evidence that Patterson would not have remained in its employ

---

[2] Although the trial judge found as a fact that Patterson both lost wages and suffered consequential damages because of her dismissal, I. H. Services concedes the trial judge in limiting Patterson's recovery to an amount equaling 52 weeks' wages at $3.35 per hour based on a 40-hour work week, *i.e.*, $6,968, did not award consequential damages. We therefore do not decide the question of whether consequential damages are recoverable under Section 41-1-70.

and been assigned other duties after the elimination of her job at the Estes Plant. *Cf. Archambault v. United Computing Systems, Inc.*, 786 F. (2d) 1507 (11th Cir. 1986) (age discrimination action indicating that the employer has the burden of proving by a preponderance of the evidence that an employee would not have been retained in some other capacity where the employer claims the employee is not entitled to lost wages for a given period because the employer eliminated the employees' job for legitimate reasons after the employer wrongfully discharged the employee); *Lewis v. Smith*, 731 F. (2d) 1535 (11th Cir. 1984) (in an equal employment opportunity action the burden is upon the employer to prove by a preponderance of the evidence that the plaintiff would not have been hired absent the discrimination).

In view of the final judgment against I. H. Services for one-year's wages and of the failure of the trial judge to find that Patterson would not have been retained by I. H. Services as an employee beyond July, 1985, we must assume that I. H. Services did not satisfy at trial its burden of proof on the issue, if indeed this issue was properly before the trial judge at all. *See Latimer v. York Cotton Mills*, 66 S. C. 135, 44 S. E. 559 (1903) (an action for breach of an employment contract in which the Supreme Court held that the burden ordinarily rests on the employer under code pleading to allege any matter that would reduce its liability under the contract, including a claim that the employee during the contract term received other employment); S. C. R. CIV. P. 8(c) (matter constituting an avoidance must be set forth affirmatively).

### 2.

I. H. Services' contention that the trial judge erred in finding that Patterson was unable to secure another job for a one-year period is manifestly without merit. Patterson herself testified as to her unsuccessful year-long effort to find employment after her discharge.

### C.

I. H. Services next complains about the exclusion by the trial judge of testimony from its witness Denise Swaney that Patterson telephoned Adams on the

night of May 4, 1985, and told him she would be late for work that evening because her brother was in an accident. The trial judge excluded as inadmissible hearsay Swaney's testimony concerning what Adams said to Swaney about what Patterson said to Adams over the telephone.

Even if this evidence were erroneously excluded, and we do not hold it was so, its exclusion was harmless and affords no basis for reversal. The evidence was cumulative to testimony later given by Adams concerning the alleged telephone call. *See Lowie v. Dixie Stores*, 172 S. C. 468, 174 S. E. 394 (1934) (the exclusion of evidence is not prejudicial where the evidence is supplied by other witnesses); *State Auto Insurance Company v. Stuart*, 287 S. C. 235, 337 S. E. (2d) 698 (Ct. App. 1985) (reversible error cannot be predicated upon the exclusion of evidence that is provided by another witness).

## II.
### A.

Patterson argues that the trial judge erred in holding that the Victim's and Witness's Bill of Rights Act does not create a private cause of action against employers and in dismissing her cause of action against I. H. Services based on the act.

The question of whether the legislature intended to create a private cause of action for either the violation of a statute or the failure to perform a statutory duty is determined primarily by the language or the form of the statute. *Whitworth v. Fast Fare Markets*, 289 S. C. 418, 338 S. E. (2d) 155 (1985). Another consideration is the statute's intended purpose. 73 Am. Jur. (2d) *Statutes* § 432 at 530 (1974).

The legislature's express purpose in enacting the Victim's and Witness's Bill of Rights Act, as stated in Section 16-3-1510, is "to ensure that all victims and witnesses of crime are treated with dignity, respect, courtesy, and sensitivity" and to ensure "that the rights extended in [the act] to victims and witnesses of crime are honored and protected by law enforcement agencies, prosecutors, and judges in a manner no less vigorous than the protections afforded criminal defendants...." The focus of the legislature's concern

for victims and witnesses is upon law enforcement agencies, prosecutors, and judges. Employers are not mentioned.

Patterson, however, points to the first sentence found in Section 16-3-1530(E)(1). This sentence declares, "A victim or witness has the right to respond to a subpoena without fear of retaliation or loss of wages from his employer."

But Section 16-3-1530(E)(1) also states, "Victims and witnesses must be provided, where appropriate, employer ... intercession services by the solicitor who ... shall seek employer cooperation in minimizing employees' loss of pay and other benefits resulting from their participation in the criminal justice process...." Thus, the only duty out of which any liability could arise is imposed by Section 16-3-1530(E)(1) upon solicitors and not upon employers.

Indeed, nowhere in Section 16-3-1530(E)(1) or in any other portion of the Victim's and Witness's Bill of Rights Act is there any provision prescribing a penalty against an employer that retaliates against a victim or witness who responds to a subpoena in a criminal case.

The Victim's and Witness's Bill of Rights Act, as its stated purpose and its language plainly indicate, is for the protection of the public, namely those members thereof caught up as victims or witnesses in this state's criminal justice system. It is not for the protection of private rights. *Cf. Whitworth v. Fast Fare Markets of South Carolina, supra* (statues making criminal the act of knowingly and willfully encouraging the delinquency of a minor and the act of selling cigarettes to minors do not create an implied cause of action).

We therefore hold that the Victim's and Witness's Bill of Rights Act does not create a private cause of action against an employer that retaliates against or reduces the wages of an employee who responds as a victim or witness to a subpoena and that the trial judge committed no error in dismissing the cause of action based on the act.

### B.

Patterson also argues the trial judge erred in holding that punitive damages are unavailable where a violation of Section 41-1-70 is found. She maintains

punitive damages are recoverable even though the statute[3] is silent as to punitive damages.

In the case before us, we must take Section 41-1-70 as we find it, neither construing the statute any more broadly nor giving it any greater effect than its terms necessarily require. *Greenville Baseball, Inc. v. Bearden,* 200 S. C. 363, 20 S. E. (2d) 813 (1942); 73 Am. Jur. (2d) *Statutes* § 198 at 395 (1974). The statute's "words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Bryant v. The City of Charleston,* ____ S. C. ____ , 368 S. E. (2d) 899 (1988).

Section 41-1-70 in plain and unambiguous language expressly limits the kind of damages recoverable for its violation in that it authorizes only the recovery of "damages caused by the dismissal." *See* 64 STAT. Act No. 320 at 2402 (1986) ("An Act ... to Provide for a Civil Action against an Employer who Dismisses ... an Employee who Complies with a Valid Subpoena [and] to Limit the Amount of Damages which may be Imposed on the Employer...."). Punitive damages are not "damages caused by the dismissal" but are, by definition, "punishing damages" or "private fines" levied to punish a wrongdoer for reprehensible conduct and to deter its repetition in the future. *Neal v. Newburger Co.,* 154 Miss. 691, 700, 123 So. 861, 863 (1929); *Gertz v. Robert Welch, Inc.,* 418 U. S. 323, 350, 94 S. Ct. 2997, 3012, 41 L. Ed. (2d) 789, 811 (1974).

The statute also expressly limits the amount of damages recoverable for its violation. Express language in the statute restricts the amount of recoverable damages "to no more than one year's salary or [52] weeks of wages based on a [40-hour] week in the amount the employee was receiving at the time of receipt of the subpoena." This limitation makes it clear, if there could be any doubt otherwise, that the legislature did not intend to authorize the recovery of punitive damages for a violation of Section 41-1-70. It would make little sense for the legislature to limit the amount of actual damages recoverable for a violation of the statute but make

---

[3] *See* note 1, *supra.*

the sky the limit for the recovery of punitive damages in such cases.

Besides, had the legislature intended to allow for the recovery of punitive damages for a violation of Section 41-1-70, it would have, as it has done before in other situations, expressly provided for their recovery. *See e.g.*, South Carolina Code of Laws § 56-15-110(3) (1976) (statute authorizing an action and limiting an award of punitive damages for a violation of chapter provisions relating to motor vehicle manufacturers, distributors, and dealers).

The trial judge, therefore, committed no error in holding that Section 41-1-70 does not allow for the recovery of punitive damages.

In closing, we are not insensitive to victim's and witness's rights and, in fact, have upheld the claim of the witness injured in this instance; but if we were to declare that the Victim's and Witness's Bill of Rights Act creates a private cause of action against certain employers or that punitive damages are recoverable under Section 41-1-70, we would be making by judicial construction laws that the General Assembly did not make. We might also be doing what, if these matters were now before the General Assembly, it would not be willing to do. *Howard v. Illinois Central Railroad Co.*, 207 U. S. 463, 28 S. Ct. 141, 52 L. Ed. 297 (1908). If a victim or a witness is to have a cause of action in addition to that provided in Section 41-1-70 or is to be allowed to recover more or different damages under Section 41-1-70, the General Assembly, and not this court, should make that decision.

Accordingly, the order of the trial judge is

Affirmed.

SHAW and CURETON, JJ., concur.