679 S.E.2d 533

James PADGETT, Appellant,

v.

COLLETON COUNTY, Respondent.

No. 4542.

Court of Appeals of South Carolina.

Heard Feb. 4, 2009.
Decided May 6, 2009.
Rehearing Denied June 29, 2009.

432

Michael Davis Moore, of Ridgeville, for Appellant.

J. Reaves McLeod, of Walterboro, for Respondent.

THOMAS, J.:

This is an appeal of a directed verdict in a premises liability lawsuit. Plaintiff James Padgett alleged he sustained injuries after stepping into a hole on the Colleton County Courthouse grounds. After Padgett presented his case, the County moved for a directed verdict, which the trial judge granted, holding (1) the dangerous condition causing Padgett's injuries was open and obvious, and (2) there was no proof of an agency relationship between the County and the party who had allegedly created the hazard. Padgett appeals. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On December 9, 2003, Padgett went to the Colleton County Courthouse to check on a deed. Upon arriving, Padgett walked down a cement walkway to the back door of the Courthouse, where he saw Richard Jenkins, who had come to the Courthouse to make a child support payment. Padgett and Jenkins did not know each other.

Upon discovering the back door was locked, Padgett followed Jenkins around the side of the Courthouse. Instead of taking the sidewalk, the two took a shorter well-worn path on the grounds that had been made by other visitors to the Courthouse. Although Jenkins "noticed the ground was kind of messed up," he continued walking. When he reached the side door of the Courthouse, he noticed Padgett had fallen.

Padgett testified he fell when he suddenly stepped into a hole that was about eight inches deep. He landed on his backside, initially feeling disoriented. Jenkins helped Padgett up and informed Courthouse security about the accident.

On January 23, 2004, Padgett filed this action against Colleton County seeking damages under the South Carolina Tort Claims Act. In his complaint, Padgett alleged the County was negligent, grossly negligent, willful and wanton in (1) failing to warn the public about the hazard causing his injuries, (2) failing to place warning signs, (3) failing to fence off the holes on the Courthouse grounds, (4) failing to supervise its employees, and failing to use the degree of care and caution that a reasonably prudent person would have used under similar circumstances. He also maintained the County, by and through its employees, created and maintained a dangerous condition.

In its answer filed April 27, 2004, the County denied liability and by way of affirmative defense alleged (1) Padgett's own negligence was the sole cause of his injuries; and (2) under the Tort Claims Act, the County was not liable for losses resulting from acts or omissions of anyone other than its own employees.

The matter was tried before a jury from December 11 through December 13, 2006.

At trial, Jenkins testified that, although the area in which Padgett fell was not barricaded, it was "pretty rough," with "soil turned upside down" and "roots sticking up." Nevertheless, Jenkins also stated that, even though there was a sidewalk, the path they took was shorter and well-worn. Furthermore, Padgett maintained they were unable to take the walkway because cement had been freshly poured; therefore, he had no choice but to walk on the grounds. He also testified that he did not see any holes and the terrain was smooth.

Jenkins did not actually see Padgett fall and at trial did not give definitive information as to the cause of the accident. While on the stand, however, he acknowledged stating in a deposition that the hole in which Padgett had stepped was a "nice size for a foot to fall in, just enough for a foot" and about the depth of a flower pot. In addition, Padgett testified that he had fallen into a hole that was "about the size of post hole diggers ... and ... full of soft sand and straw. He further testified that the ground where he fell was smooth and perfectly level."

According to Patricia Grant, the Colleton County Clerk of Court, shrubbery was being removed from the Courthouse grounds in 2003 for security reasons. Grant could not recall seeing any signs prohibiting pedestrian traffic on the grass. She also testified that she did not notice any of the walkways were disabled.

Karla Daddieco, the Administrative Services Director for Colleton County in 2003, testified that in October 2003 the County entered into a contract with Jeffrey Simmons Lawn Care for general lawn maintenance. Simmons also agreed to an addendum to the contract under which he would provide for removal of stump shrubbery at the Courthouse for $400. Daddieco stated the County considered the agreement to be a small contract and did not require Simmons to be bonded or have liability insurance. At the prompting of counsel for the County, the court admonished Padgett's attorney out of the jury's presence that references to liability insurance was inappropriate. When the jurors returned to the courtroom, the judge again instructed them to disregard the reference to insurance.

Consistent with Grant's testimony, Daddieco also maintained none of the sidewalks were closed down on December 9, 2003. Daddieco further testified that she had no personal knowledge that Simmons had used any caution tape in connection with the landscaping work. She had no opinion as to whether Simmons would have been responsible for doing this if it had been required; however, she acknowledged giving deposition testimony that it was her assumption that caution tape would be used in connection with landscaping projects undertaken by Simmons. She also admitted to having seen people on the lawn of the Courthouse and testified that the facilities director would have had the responsibility for making sure Simmons used caution tape. Daddieco further acknowledged the Courthouse was a place of public accommodation for all individuals.

At the close of Padgett's case-in-chief, the County moved for a directed verdict, arguing (1) there was no actionable negligence on its part that was the proximate cause of Padgett's injuries and Padgett's own negligence was the proximate cause of his injuries; (2) the alleged hazard causing Padgett's injuries was an obvious defect; and (3) to the extent that the hole was a latent defect, the County could not be liable for Padgett's injuries because it could not have discovered it through reasonable inspection.

The trial judge directed a verdict for the County, finding (1) the condition causing Padgett's injuries was an open and obvious defect for which no warning was necessary from the County; and (2) there was no evidence connecting the County to Simmons in terms of any kind of agency liability. Padgett then made a motion to alter or amend the judgment and a motion for a mistrial or in the alternative for a new trial. Following the denial of these motions, Padgett filed this appeal.

## ISSUES

I. Did Padgett present sufficient evidence to create a jury issue as to whether the condition causing him to fall was open and obvious?

II. Notwithstanding evidence that the condition causing Padgett's fall was open and obvious, was the County subject

to liability based on evidence that it should have anticipated the harm that resulted from the condition?

Did the trial judge err in basing his decision to direct a verdict for the County on the fact that Simmons was an independent contractor?

## STANDARD OF REVIEW

A court should deny a directed verdict motion "when the evidence yields more than one inference or its inference is in doubt." *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002). "When reviewing the trial court's ruling on a motion for a directed verdict, we must employ the same standard as the trial court—that is, we must consider the evidence in the light most favorable to the non-moving party." *Fickling v. City of Charleston*, 372 S.C. 597, 603, 643 S.E.2d 110, 113 (Ct.App.2007), *cert. denied*, October 31, 2007. In reviewing a directed verdict, the appellate court "must resolve whether it would be reasonably conceivable to have a verdict for a party opposing the motion under the facts as liberally construed in the opposing party's favor." *Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 509 (2006).

## LAW/ANALYSIS

### I. The Open and Obvious Nature of the Hazard

Padgett argues the trial judge, in finding the hole in which he fell was an open and obvious hazard, improperly weighed competing evidence on this issue. We agree.

"Reasonable care on the part of [a] possessor [of land] ... does not ordinarily require precautions, or even warning, against dangers which are known to [a] visitor, or so obvious to him that he may be expected to discover them." *Restatement (Second) of Torts* § 343A cmt. e (1965) (*quoted in Creech v. S.C. Wildlife and Marine Res. Dep't*, 328 S.C. 24, 31, 491 S.E.2d 571, 574 (1997)).

As the County pointed out in its brief, the trial judge, in granting its directed verdict motion, found that no reasonable juror could dispute the physical evidence presented, namely, a photograph of the area that was taken shortly after the

accident occurred. In ruling on the motion, the trial judge described his observations in detail, noting as follows:

As you move on over toward those steps, you can see that the land is not perfectly smooth and level. It is disturbed. There are roots out. It does appear very clearly as if the ground had recently been disturbed. There are some leaves on the ground, but it's hard for me to imagine that the leaves that I see there are enough to cover up the hole that Mr. Padgett says he stepped in. But more importantly, there's no way that those leaves covered up the hole that I can see that's about four feet past the place where Mr. Padgett stepped.

So considering all of the testimony and all of the evidence that related to Mr. Padgett's version of the way that ground looked, in my view the property out there is—the fact that there are holes there and are dangerous places to walk is open and obvious.

The County also cites *Legette v. Piggly Wiggly, Inc.*, 368 S.C. 576, 629 S.E.2d 375 (Ct.App.2006), for the proposition that "[t]estimony that contradicts undisputed physical evidence generally lacks probative value." *Id.* at 580, 629 S.E.2d at 377. *Legette*, however, is distinguishable from the present case. Whereas testimony from the plaintiff in *Legette* as to whether she had seen mats and warning signs about moisture on the floor of the defendant's store was equivocal at best, Padgett never wavered in his statements that the ground on which he fell was smooth and the sidewalk was unavailable for pedestrian traffic.

Furthermore, we do not agree with the finding that the photograph conclusively established the defect was open and obvious. Although Padgett submitted the photograph, he also asserted in his brief the photograph showed the hole was partially covered, and we find it significant that the County did not respond to this assertion. *See Patterson v. I.H. Servs., Inc.*, 295 S.C. 300, 304, 368 S.E.2d 215, 218 (Ct.App. 1988) (noting that, notwithstanding the circumstances suggesting that the respondent's testimony was implausible, "neither objective nor scientific evidence offered by [the appellant] nor common knowledge render inherently incredible [the respondent's] testimony").

## II. The County's Anticipation of the Danger

Padgett further contends that even if the hole was open and obvious, the County was still subject to liability based on evidence that it should have anticipated that harm that could be caused by the defect. We agree.

In *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 406 S.E.2d 361 (1991), the supreme court noted: "The traditional 'no duty to warn of the obvious' rule has been modified in many jurisdictions to hold that an owner is liable for injuries to an invitee, despite an open and obvious defect, if the owner should anticipate that the invitee will nevertheless encounter the condition, or that the invitee is likely to be distracted." *Id.* at 125, 406 S.E.2d at 362. Following this trend, the court adopted the *Restatement (Second) of Torts* § 343(A) (1965), which provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Callander*, 305 S.C. at 126, 406 S.E.2d at 362. Quoting comment (f) to this section, the court further explained that "an owner may be required to warn the invitee, or take other reasonable steps to protect him, if the 'possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, . . . or fail to protect himself against it.'" *Id.*, 406 S.E.2d at 362–63 (quoting *Restatement (Second) of Torts* § 343(A) cmt. (f)).

Similarly, in the recent case of *Hancock v. Mid–South Management Co.*, the supreme court, in reversing the grant of summary judgment in a premises liability action arising from the plaintiff's fall in the defendant's parking lot, stated: "While a parking lot's state of disrepair may be considered open and obvious, a jury could determine that Respondent should have anticipated that such a condition may cause an invitee to fall and injure themselves." *Hancock v. Mid–South Management Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). Although the present case concerns a directed verdict, we see no reason why the evidence Padgett presented, especially (1) Jenkins' testimony that the path he and Padgett took was well-worn, (2) Daddieco's acknowledgement that she had

seen people on the lawn of the Courthouse grounds, and (3) Padgett's testimony that the sidewalk was unavailable, cannot give rise to a reasonable inference that the County should have anticipated that individuals using the services at the Courthouse could be harmed by the ongoing landscaping operations.

### III.   Simmons' Status as an Independent Contractor

Finally, Padgett argues the trial judge incorrectly ruled the County could not be held liable for his injury because the individual who created the dangerous condition resulting in his injury was an independent contractor.   It was Padgett's position at trial and on appeal that the County was ultimately responsible for ensuring the caution tape was used where active landscaping was taking place, regardless of who was supposed to put it up.   We agree.

■   Under the South Carolina Code Tort Claims Act, a governmental entity is not liable for a loss resulting from "an act of or omission of a person other than an employee." S.C.Code Ann. § 15–78–60(20) (2005).   This section, however, "would not operate to exonerate [a governmental entity] of liability for its own conduct."   *Greenville Mem'l Auditorium v. Martin*, 301 S.C. 242, 247, 391 S.E.2d 546, 548 (1990).

The County's sole argument in response to this assertion is that Padgett did not include this issue in his post-trial motions and therefore failed to preserve this issue for appeal.   A review of the trial judge's ruling on this issue and the colloquy immediately preceding it, however, indicates Padgett's argument regarding agency liability was both raised to and ruled upon by the trial court.   *See Bailey v. Segars*, 346 S.C. 359, 365, 550 S.E.2d 910, 913 (Ct.App.2001) ("Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not ruled upon.").[1]

---

1.   In directing a verdict for the County, the trial judge ruled in pertinent part: "Certainly the County has some duty to oversee the work that its contractors do, but the situation here is distinguishable from the situations that you have pointed out to me in some of the other cases."   The "other cases" cited by Padgett's attorney in opposition to the County's directed verdict motion included *Madison v. Babcock Center*, 371 S.C. 123, 638 S.E.2d 650 (2006) (holding the defendants owed a common

At trial, Padgett argued the County's common law duty to supervise Simmons "does not end because they signed a contract with Mr. Simmons." He further correctly pointed out that Daddieco acknowledged that the County facilities director would have been responsible for making sure caution tape was in place when and where it was necessary. There was also evidence that the County was responsible for removing caution tape when it was no longer required in an area and an acknowledgment that the Courthouse was a place of public accommodation for all individuals. The evidence, then, when construed in Padgett's favor, could have supported a finding by the jury that even if the County was not liable for any act of omission on Simmons' part, the County was negligent in discharging its own duties to adequately maintain the Courthouse premises and this negligence created a reasonably foreseeable risk of injury resulting from Simmons' landscaping operations. *Cf. Greenville Mem'l Auditorium*, 301 S.C. at 247, 391 S.E.2d at 549 (holding the defendant could not successfully assert the plaintiff's injuries resulted from the wrongful criminal act of a third party "where by very basis upon which appellant is claimed to be negligent is that appellant created a reasonably foreseeable risk of such third party conduct").

## CONCLUSION

We agree with Padgett that the trial judge erred in directing a verdict for the County in this action; therefore, we reverse the directed verdict and remand the matter to the trial court for further proceedings.

**REVERSED AND REMANDED.**

SHORT and GEATHERS, JJ., concur.

---

law duty to supervise a mentally retarded resident and provide her with appropriate care) and *Vaughan v. Town of Lyman*, 370 S.C. 436, 635 S.E.2d 631 (2006) (concerning the liability of a governmental entity for a trip and fall on a sidewalk that had become broken over time by overgrown tree roots), and *Greenville Memorial Auditorium v. Martin*, 301 S.C. 242, 391 S.E.2d 546 (1990) (upholding a judgment against a governmental entity for an injury resulting from criminal acts of third persons on the ground that the entity and its employees were negligent).