649 S.E.2d 127

**Shirley Leder OSTERNECK, as Personal Representative of the Estate of Guy Kenneth Osterneck, Appellant,**

**v.**

**Myles N. OSTERNECK, Gertrude B. Osterneck, and Rhoda Osterneck, Respondents.**

**No. 4265.**

Court of Appeals of South Carolina.

Heard May 9, 2007.

Decided June 27, 2007.

Rehearing Denied Aug. 24, 2007.

574

John Ravenel Chase, of Florence, and Sarah Patrick Spruill, of Columbia, for Appellant.

David B. Miller and Mary Anna Neill, both of Myrtle Beach, for Respondents.

STILWELL, J.

Shirley Osterneck appeals the master in equity's ruling that Myles Osterneck is the owner of property formerly owned by his parents, David and Gertrude Osterneck (Father and Moth-

er). Shirley disputes the master's reliance on a purported family agreement between Mother and her children, and the allowance of testimony by Rhoda Osterneck, Father and Mother's daughter-in-law. We affirm.

## FACTS

Father died testate on November 9, 1986, survived by Mother and their three sons: Robert, Guy Kenneth, and Myles. Father's will named Myles and Robert as co-executors; however, Robert declined to serve. Father's estate consisted of a one-half interest in the marital home, worth approximately $225,000, and approximately $231,000 in other assets. Father and Mother also held a joint certificate of deposit with a right of survivorship. The certificate of deposit was valued at $230,000. Father's will left Mother all personal property and the sons $500,000 to divide equally. There were insufficient non-marital assets in the estate to fund the bequest to the sons. Father's will did not specifically devise his one-half interest in the marital home. On June 11, 1987, Mother disclaimed her interest in the certificate of deposit, allowing the money to pass to the estate.

Father and Mother's eldest son, Robert, died in 1991 and was survived by his widow, Rhoda. Father and Mother's middle son, Guy Kenneth, passed away in 1993 and was survived by his widow, Shirley, the appellant.

In October 1993, Myles filed a petition to reopen Father's estate for the purpose of conveying Father's one-half interest in the marital home to Mother. In a letter dated December 1994, Shirley received notice regarding the deed of distribution.

In October 1998, Myles purchased the marital home from Mother for $635,000, $10,000 more than its appraised value. In March 2001, Shirley instituted litigation claiming an interest in the marital home. She subsequently filed an amended complaint alleging breach of fiduciary duty and fraud by Myles.

The master found that a family agreement existed to exchange Father's half interest in the marital home for Mother's interest in the certificate of deposit, and that title to the marital home belonged to Myles. Further, the master held

Myles did not commit fraud or breach his fiduciary duty and that these claims were barred by the statute of limitations.

## STANDARD OF REVIEW

■ The parties disagree on the applicable standard of review. A declaratory judgment action is neither equitable nor legal, but is instead determined by the nature of the underlying issue. *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).

■ Shirley argues the underlying action is to quiet title, which she requested in her amended complaint. An action to quiet title resides in equity. *Van Every v. Chinquapin Hollow, Inc.*, 265 S.C. 474, 477, 219 S.E.2d 909, 910 (1975). When reviewing an equitable action heard first by a master-in-equity and appealed directly to an appellate court, the court should review the facts in accordance with its own view of the preponderance of evidence in the record. *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). This broad scope of review does not require the appellate court to ignore the fact that the master was in a better position to assess the credibility of witnesses and assign weight to their testimony. *Id.*

■ Myles argues the real issue is determining who has title to the marital home. The determination of who has title to real estate is a legal issue. *Cook v. Eller*, 298 S.C. 395, 397, 380 S.E.2d 853, 854 (Ct.App.1989). "In a law case tried by the judge without a jury the standard of appellate review is limited to a correction of errors of law and a determination if there is any evidence to support the factual findings of the trial judge." *Id.* (citing *Wigfall v. Fobbs*, 295 S.C. 59, 367 S.E.2d 156 (1988); *Patterson v. I.H. Servs. Inc.*, 295 S.C. 300, 368 S.E.2d 215 (Ct.App.1988)).

It is unnecessary for us to determine which standard of review is applicable in this particular case, as under either standard the result would be the same.

## LAW/ANALYSIS

### I. Family Agreement

■ Shirley argues the master erred in finding the existence of a family agreement to exchange Father's estate's half

interest in the marital home for Mother's interest in a certificate of deposit. We disagree.

First, we note the South Carolina Probate Code generally requires family agreements to be in writing. S.C.Code Ann. § 62–3–912 (1987). However, the South Carolina Probate Code does not apply to this case, because the probate code took effect on July 1, 1987, after the agreement resulting in the swap of assets.[1]

The recognition of family agreements is favored by the courts, and the evidence in this case fully supports the making of such an agreement. *Smith v. Williams,* 141 S.C. 265, 279, 139 S.E. 625, 629 (1927). From a documentary perspective, Father's estate's half interest in the marital home was initially listed in the estate's probate papers. Mother then signed a document disclaiming her interest in a certificate of deposit worth $230,000, allowing this sum to pass through the estate to the sons. Subsequently, an accounting was submitted by Myles, which listed the certificate of deposit but did not list the one-half interest in the marital home. Lastly, the deed of distribution was executed by Myles on behalf of Father's estate, giving Mother the entire interest in the marital home.

Additionally, the testimony of several parties corroborated the evidence regarding the existence of a family agreement. Kenneth Davis, the accountant who prepared the tax return for Father's estate, stated in a deposition:

> So all of us met—Myles, Guy [Kenneth], Bob, and his mother. All these Osternecks and myself met in Guy's office. And that's when they told me that they had decided that they had made a swap of the CD for the—for the house in her name. So—and for me to go ahead and make the tax

---

1. S.C.Code Ann.Code § 62–1–100 (Supp.2006). Section 62–1–100(4) provides:

   [A]n act done before the effective date in any proceeding and any accrued right is not impaired by this Code. Unless otherwise provided in the Code, a substantive right in the decedent's estate accrues in accordance with the law in effect on the date of the decedent's death. If a right is acquired, extinguished, or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions remain in force with respect to that right. . . .

return based on—and—and whatever was best. So that's when I came up with the disclaimer.

At trial Myles testified, "[m]y brothers and myself agreed to exchange the half interest in my father and mother's home so that my mother had full title to the house in exchange for the $230,000." In addition, the testimony of Rhoda, discussed in more detail below, further corroborates the existence of the agreement.

Shirley correctly notes that certain tax returns for Father's estate indicate that Mother and Father jointly held title to the marital home as tenants by the entirety.[2] She contends therefore that the family believed Mother already owned the marital home outright, and she gave her disclaimer for no consideration. If so, there was no true exchange, and Father's half interest in the house should remain in trust for the ultimate benefit of the sons or their heirs. Despite the tax returns, the greater weight of the evidence supports the existence of a family agreement. Consequently, the ruling of the master was appropriate.

## II.  Testimony Against Interest

■  Shirley further argues the master erred by admitting hearsay testimony from Rhoda Osterneck regarding statements by Rhoda's deceased husband, Robert. We disagree.

■  "The admission of evidence is a matter left to the discretion of the trial judge and, absent clear abuse, will not be disturbed on appeal." *Carlyle v. Tuomey Hosp.*, 305 S.C. 187, 193, 407 S.E.2d 630, 633 (1991) (citation omitted). "In order for this court to reverse a case based on the erroneous admission or erroneous exclusion of evidence the plaintiff must show error and prejudice." *Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 405, 175 S.E.2d 805, 819 (1970).

Rules 804(a)(4) and 804(b)(3) of the South Carolina Rules of Evidence provide exceptions to the hearsay rule if the declarant, in this case Robert, is unavailable due to death. The exception permits the admission of the statement if it is so far

---

2. This is the presumption prevailing under North Carolina law, where the Osternecks had previously resided. *See Nesbitt v. Fairview Farms, Inc.*, 239 N.C. 481, 80 S.E.2d 472, 476 (1954).

contrary to the declarant's pecuniary interest that a reasonable man in the same position would not have made the statement unless it was true. Rule 804(b)(3), SCRE.

Section 19–11–20 of the South Carolina Code (1976), the "Dead Man's" statute, bars the testimony of a person with an interest from testifying regarding a conversation with a deceased individual. However, the statute has many exceptions, including "witness testimony that is against his or her interest." *Brooks v. Kay*, 339 S.C. 479, 486, 530 S.E.2d 120, 124 (2000).

At trial, Rhoda agreed she was in the same legal position as Shirley because they are both widows of a son of Father and Mother. Rhoda testified her deceased husband had told her that the sons and Mother met with the accountant and decided Mother would disclaim her interest in the certificate of deposit in exchange for Father's estate's one-half interest in the marital home.

Rhoda's testimony was against her personal interest, because she could make the same claim Shirley was pursuing for an interest in the marital home. Additionally, Rhoda's husband's statement was against his own interest because, if the family agreement did not exist and Mother disclaimed her interest in the certificate of deposit, the sons would have a windfall. Therefore, the master did not abuse his discretion in admitting Rhoda's testimony. Even if the master erred in admitting Rhoda's testimony, Shirley was not prejudiced due to the overwhelming evidence that the family agreement existed.

### III. Deed of Distribution

Shirley argues the deed of distribution does not convey Father's one-half interest in the marital home to Mother. We disagree.

A deed of distribution from a personal representative is evidence that the distributee has succeeded to the interest of the estate. *See* S.C.Code Ann. 62–3–908 (Supp.2006). A personal representative is also authorized to make a distribution in kind pursuant to section 62–3–907 of the South Carolina Code (Supp.2006).

Father's will vested in Myles, as executor, the following powers:

(a) To sell, transfer and convey the whole or any part of the property, whether real or personal, constituting this estate or trust, at such times, in such manner, upon such terms and conditions, and for such price, as to the executor or trustee shall seem best, together with power to make, execute and deliver such instruments as shall be necessary to effectuate such sale or sales without an order of court.

Myles acted within his power as executor by releasing the estate's claim on the marital home in accordance with the family agreement through the deed of distribution. Therefore, relying heavily on the master's comprehensive opinion, we hold the equities and legal conclusions reside with Myles.

## CONCLUSION

Accordingly, the master did not err in holding Myles the sole owner of title to the marital home because evidence established that a family agreement existed. Further, the master did not err in admitting Rhoda's testimony regarding statements made by her deceased husband, and Myles acted within his powers as executor in releasing Father's estate's claim on the marital home. Therefore, the master's ruling is

**AFFIRMED.**

SHORT and WILLIAMS, JJ., concur.