THIS OPINION HAS
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT
 IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE
 STATE OF SOUTH CAROLINA
In The
 Court of Appeals

 
 
 
 James F. Meyer and Virginia P. Meyer,  Plaintiffs,
 
 
 

v.

 
 
 
 Charleston County and Charleston County Delinquent Tax Department, Morris Brooke, Larry Goodwin, Frances Goodwin, and Joseph Keating,  Defendants.
 
 
 

________________________

 
 
 
 Larry Goodwin and FrancesGoodwin,  Appellants,
 
 
 

v.

 
 
 
 James F. Meyer and Virginia P. Meyer,  Respondents,
 and Charleston County, Morris Brooke, Joseph Keating, Linda M. Bond, Edward Wiseman, III, Jane Doe and John Doe, fictitious names
 representing unknown heirs and distributees or devisees of any of the Defendants who may be deceased, and also representing any unknown persons claiming any rights, title or
 interest in or lien upon the real estate the subject hereof, Richard Roe and Sarah Roe, fictitious names representing unknown persons who may claim an interest therein as may be infants, incompetents, in the military service and persons entitled to protection under the Soldiers and Sailors Civil Relief Act of 1940, or others who may be under any other disability, Cross-Defendants,
 of whom Charleston County, Charleston County Delinquent Tax Department, Morris
 Brooke, Joseph Keating, Linda M.
 Bond, and Edward Wiseman, III, are Respondents.
 
 
 

Appeal
 From Charleston County
 Mikell
 R. Scarborough, Master-in-Equity

Unpublished
 Opinion No. 2011-UP-179
 Heard
 February 9, 2011  Filed April 19, 2011    

AFFIRMED 

 

 
 
 
 Jeffrey
 T. Spell, of North Charleston, for Appellants.
 Anthony
 D. Hoefer, of Sumter; Bernard E. Ferrara, Jr., of North Charleston; Charles H.
 Gibbs, Jr. and Thomas P. Lowndes, Jr., both of Charleston; Edward Wiseman, III,
 of Summerville; Joseph Keating and Linda M. Bond, both of John's Island; and G.
 Thomas Hill, of Ravenel, for Respondents.
 
 
 

PER CURIAM:  Respondents, James
 and Virginia Meyer (collectively "Taxpayers"), brought this quiet
 title action to recover their John's Island home after Appellants, Larry and
 Frances Goodwin ("Purchasers"), purchased the home at a tax sale. 
 The Master-in-Equity granted the requested relief, and Purchasers appealed. 
 Purchasers argue that the master erred in concluding the Charleston County Tax
 Collector ("the County") failed to comply with the notice
 requirements of sections 12-51-40 & -120 of the South Carolina Code (Supp.
 2010) in collecting taxes on the John's Island home.[1] 
 We affirm.  
FACTS/PROCEDURAL
 HISTORY
Morris Brooke
 (Mortgagee) hired Virginia Meyer to provide caregiving services to his wife,
 Peg Brooke, after she suffered from a brain aneurism that left her physically
 and cognitively handicapped.  Mortgagee determined that to best meet his
 family's needs, he would assist Taxpayers in building a house large enough so
 that he, Mrs. Brooke, and Taxpayers could live together.  Mortgagee loaned
 Taxpayers the funds necessary to buy a lot on John's Island and to build a
 house on it.  Mortgagee also agreed to pay the expenses for an elevator and a
 handicapped bathroom in the house.  
On April 7,
 2003, Taxpayers purchased the lot at 1367 River Road on John's Island from developer
 Macarena Keating for $140,000.[2] 
 Taxpayers were under the mistaken impression that the 2004 taxes on the lot
 were paid out of the proceeds from the closing of the sale.  On April 9, 2003, Taxpayers
 granted a first mortgage on the property to Mortgagee in the amount of $165,000. 
 As construction expenses increased, Mortgagee loaned an additional $235,000 to
 Taxpayers in return for a second mortgage on the premises.    
In March of
 2004, Taxpayers conveyed back to Mrs. Keating a portion of their lot, 0.412 of
 an acre, for the sum of $35,000.  Taxpayers used this sum to fund ongoing
 construction on their remaining property, and Mrs. Keating sold the new
 .412-acre lot to Linda Bond, a cross-defendant in this action.[3]
On April 15,
 2005, Taxpayers sold their residence at 1 South Held Circle on James Island in
 anticipation of moving into their new home on John's Island.  During the
 completion of construction on the new home, Taxpayers lived in an apartment on
 James Island until August 1, 2005, when the apartment lease expired.  They then
 stayed with various friends and relatives until they received a certificate of
 occupancy for the John's Island home on November 22, 2005.  
In the meantime,
 the County began the process of collecting the delinquent 2004 taxes on
 Taxpayers' lot by mailing an Execution Notice dated April 11, 2005, to
 Taxpayers at the South Held Circle address.[4] 
 The exact date that the notice was actually mailed is unknown.  Notably, all
 envelopes used by the County had the notation "Return Service
 Requested," which required the postal service to return undeliverable mail
 sent by the County back to the County rather than forwarding the mail.  Due to
 the Taxpayers' April 15th move date, and due to the delay between dates on
 County letters and their actual mailing dates, the master found credible Taxpayers'
 assertion that they did not receive the Execution Notice.  
In a continued
 attempt to collect the 2004 taxes, the County sent a Notice of Levy to
 Taxpayers at the South Held Circle address by certified mail, return receipt
 requested, restricted delivery.  The letter was returned to the County on June
 20, 2005, stamped "Unclaimed."  Virginia Meyer had signed the return
 receipt; however, the signature of both Taxpayers was required before the
 postal service would release the letter.  James Meyer went to the post office
 to sign for the letter, but he was informed that the letter had already been
 returned to the County.  
The County later
 attempted to post a notice on the property at 1367 River Road informing
 Taxpayers that the property was officially "seized" and would be sold
 on October 3, 2005, to satisfy delinquent taxes.  However, Taxpayers testified
 that they never saw such a notice.  A tax sale was conducted on October 3, 2005,
 and Purchasers submitted a successful bid.  
Still unaware of
 the delinquency for the 2004 tax year, Taxpayers filed with the County
 Assessor's Office an application for an adjustment of the 2005 taxes for the 4%
 qualified residential rate.  On July 24, 2006, Mr. Meyer spoke with various
 County employees by telephone concerning the 2005 taxes.  He was informed that
 the application for the 4% rate had been approved, and he was directed to the Delinquent
 Tax Department to obtain the exact amount due.  Martine McPherson, an
 Accounting Technician in the Delinquent Tax Department, informed Mr. Meyer that
 the property had been sold at a tax sale in 2005.  Mrs. McPherson noted that
 Mr. Meyer seemed "shocked."  
On September 12,
 2006, the County mailed correspondence to Taxpayers advising them that the one-year
 period in which they were allowed to redeem the property would expire on
 October 4, 2006.[5] 
 The County sent a similar notice to Mortgagee.  All of the notices were
 returned to the County as undelivered.  Mortgagee was out of the state for his
 son's wedding in Pennsylvania when the notice of redemption was mailed to him,
 and he did not return to South Carolina until October 2, 2006.  He never found
 the notice of redemption in his mailbox or in the mail he retrieved from the
 post office.  
On October 27,
 2006, Taxpayers filed an action to quiet title to their John's Island property.[6] 
 The parties signed a Consent Order prohibiting the County from issuing a tax
 deed to Purchasers.  Therefore, Taxpayers continued to live in their John's
 Island home and to complete the construction of their home.  
At the hearing
 before the master, Taxpayers testified and presented the testimony of Mortgagee
 and Joseph Keating.  The County presented the testimony of Dionne Brown, a
 Revenue Specialist in the County's Delinquent Tax Department, and Martine
 McPherson, the Accounting Technician in the Delinquent Tax Department.  Mrs.
 Brown testified that she mailed the Execution Notice and the Notice of Levy to
 Taxpayers and that she later posted a delinquent tax notice to their home.  However,
 Mr. Keating, who owned the adjacent lot, testified that during the summer of
 2005, he saw the notice of tax sale for Taxpayers' home posted on the stairway
 entrance to his own home.  He stated that he did not say anything to Taxpayers
 about the notice and threw it away because he thought that Taxpayers would also
 receive notice of the delinquent taxes in the mail and he did not want to
 embarrass them.  He further testified about other mistaken postings in his
 neighborhood due to confusion over addresses.  
The master issued an order
 quieting title in the names of Taxpayers.  In his order, he found that at no
 time prior to the tax sale did the County notify Mortgagee of the tax
 delinquency.  He also found that Taxpayers would have moved out of the house at
 1 South Held Circle by the time that any Execution Notice would have arrived
 and that Mrs. Brown posted the tax sale notice on the wrong house.  The master
 further found that Taxpayers did not receive any of the mailed notices of
 delinquent taxes or the tax sale notice posted on Mr. Keating's house. 
 Finally, the master found that neither Taxpayers nor Mortgagee received any of
 the notices of redemption mailed by the County.  The master concluded that the
 County failed to meet the requirements of S.C. Code Ann. §§ 12-51-40 & -120
 (Supp. 2010).  The master denied Purchasers' motion to alter or amend.  This
 appeal followed.  
ISSUES ON APPEAL 
1. Did
 the master err in concluding that the County violated section 12-51-40(c) of
 the South Carolina Code (Supp. 2010) when it posted the notice of tax sale on
 the wrong house?
2.  Did
 the master err in concluding that the County violated section 12-51-40(b) of
 the South Carolina Code (Supp. 2010) by failing to send notice of delinquent
 taxes to Mortgagee prior to the tax sale?
3.  Did
 the master err in concluding that the County violated section 12-51-120 of the
 South Carolina Code (Supp. 2010) by not following up on the notices of
 redemption?
STANDARD
 OF REVIEW
"An
 action to quiet title resides in equity."  Osterneck
 v. Osterneck, 374 S.C. 573, 577, 649 S.E.2d 127, 129 (Ct. App. 2007).  "When
 reviewing an equitable action heard first by a master-in-equity and appealed
 directly to an appellate court, the court should review the facts in accordance
 with its own view of the preponderance of evidence in the record."  Id. 
 However, "[t]his broad scope of review does not require the appellate
 court to ignore the fact that the master was in a better position to
 assess the credibility of witnesses and assign weight to their testimony."
  Id.
LAW/ANALYSIS
Introduction
"In
 South Carolina, 'all requirements of the law leading up to tax sales [that] are
 intended for the protection of the taxpayer against surprise or the sacrifice
 of his property are to be regarded mandatory and are to be strictly enforced.'"  Smith v. Barr, 375 S.C. 157, 164, 650 S.E.2d 486, 490 (Ct. App. 2007)
 (quoting Donohue
 v. Ward, 298 S.C. 75,
 83, 378 S.E.2d 261, 265 (Ct. App. 1989)).  "Additionally,
 the failure to give the required statutory notice renders the tax sale invalid."  Smith, 375 S.C. at 164, 650 S.E.2d at 490.  "Even
 actual notice is insufficient to uphold a tax sale absent strict compliance
 with statutory requirements."  In re Ryan Inv. Co., 335 S.C. 392,
 395, 517 S.E.2d 692, 693 (1999).  
Section 12-51-40
 of the South Carolina Code (Supp. 2010) sets forth the alternate procedure for
 notifying a taxpayer of delinquent taxes prior to conducting a tax sale.[7]  Section
 12-51-40(a) requires counties to send a notice of delinquent
 property taxes to "the defaulting taxpayer and to a grantee of record of
 the property, whose value generated all or part of the tax."  The notice
 must be mailed to the best address available.  § 12-51-40(a).    
Subsection
 (b) of section 12-51-40 provides that if the taxes remain unpaid after thirty
 days from the date of mailing of the delinquent notice, a county must mail a
 notice of delinquent property taxes to the defaulting taxpayer and "any
 grantee of record of the property" by certified mail, return receipt
 requested, with delivery restricted to the addressee.  § 12-51-40(b).  If
 this notice is returned, a
 county must then take exclusive physical possession of the taxpayer's property by
 posting a notice of
 an impending tax sale "at one or more conspicuous places on the premises" pursuant to
 subsection (c) of the statute.  § 12-51-40(c).
After
 the tax sale, the defaulting taxpayer, a grantee, a mortgagee, or judgment
 creditor may redeem the real property within the following twelve months.  S.C.
 Code Ann. §
 12-51-90 (Supp. 2010).  A county must send to these persons a notice of the approaching end
 of the redemption period pursuant to section 12-51-120.  If the property is not
 redeemed within the allotted time, a county must deliver a tax title to the
 purchaser.  S.C. Code Ann. § 12-51-130 (Supp. 2010).  
Posting
Purchasers assert
 that the master erred in concluding
 the County violated section 12-51-40(c) because the evidence shows that the
 County posted the notice of tax sale on the correct house.  Purchasers request
 the court to find facts in accordance with the testimony of Dionne Brown, the
 County employee who attempted to post the property.  They argue that her
 testimony regarding the location of the posting was more credible than the
 testimony of the Taxpayers' neighbor, Joseph Keating, who indicated that the
 posting was on his own house rather than Taxpayers' house.  We disagree.  
Although this
 court may find facts in accordance with its own view of the preponderance of
 the evidence, prudence dictates that we defer to the trier of fact on matters of
 witness credibility.  See, e.g., Tiger,
 Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989)
 (holding that while the court could review the evidence to determine facts in
 accordance with its own view of the preponderance of the evidence, it would not
 disregard the findings of the master, who saw and heard the witnesses and was
 in a better position to evaluate their credibility); Bishop v. Tolbert,
 249 S.C. 289, 298, 153 S.E.2d 912, 917 (1967) ("The issues in the
 trial of this case were essentially factual and since the testimony was in
 sharp conflict, the credibility of the witnesses and the resolution of the
 testimony was a matter peculiarly within the province of the Master."); Osterneck,
 374 S.C. at 577, 649 S.E.2d at 129 ("This broad scope of
 review does not require the appellate court to ignore the fact that the master
 was in a better position to assess the credibility of witnesses and assign
 weight to their testimony.").  
We
 see no compelling reason to deviate from the master's credibility assessment
 in the present case.  Therefore, we affirm his
 finding that the County failed to post the Taxpayers' property as required by
 section 12-51-40(c).  In view of our disposition of this issue, we need not address Purchasers'
 remaining issues.  See Futch v. McAllister
 Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the appellate court need not review
 remaining issues when its determination of a prior issue is dispositive of the
 appeal).

 CONCLUSION
Accordingly,
 the master's voiding of the tax sale is AFFIRMED.  
WILLIAMS,
 GEATHERS, and LOCKEMY, JJ., concur.

[1] The relevant
 language in both section 12-51-40 and section 12-51-120 has remained the same since
 January 1, 2001.  The tax year in dispute in this case is 2004.  Section
 12-51-40 sets forth the requirements for sending notice of delinquent taxes to
 taxpayers and posting a tax sale notice on the property.  Section 12-51-120
 sets forth the requirements for sending the notice of redemption to taxpayers
 and other interested persons, such as mortgagees.  The requirements of section
 12-51-40(a)-(c) and section 12-51-120 are discussed in greater detail in the
 analysis section of this opinion.  
[2] Mrs. Keating
 and her husband, Joseph Keating, owned the adjacent lot, and Mr. Keating
 performed the grading on Taxpayers' lot.  Mr. Keating is a cross-defendant in
 this action due to his filing of a mechanics lien on Taxpayers' lot on October
 25, 2006, just days before Taxpayers filed this quiet title action. 
[3] Taxpayers granted an easement across their property to Linda Bond.  Purchasers
 filed a counterclaim and cross-claim seeking judgment quieting title to the
 John's Island property in their name and also extinguishing Linda Bond's
 easement.  
[4] The 2004 taxes
 were assessed on the lot before Taxpayers made any improvements to the lot.  
[5] The
 County mailed two notices to Mrs. Meyer individuallyone at the South Held
 Circle address and the other to the John's Island address.  The notice mailed
 to the John's Island address bore an incorrect zip code.  In a similar fashion,
 the County mailed two notices to Mr. Meyer.    The County also mailed a notice
 to the Taxpayers jointly at the John's Island address with the correct zip
 code.  
[6] Taxpayers
 later amended their complaint to add a cause of action for unjust enrichment
 and a cause of action under the South Carolina Betterment Statute, S.C. Code
 Ann. § 27-27-10 to -100 (2007). 
[7] The primary
 procedure for counties to follow in enforcing the payment of property taxes is
 set forth in Title 12, Chapter 49 of the South Carolina Code.  See S.C.
 Code Ann. §§ 12-49-10 to
 -1290 (2000 & Supp. 2010).  The provisions in Chapter 51 set forth an
 alternate procedure for counties to use for enforcing the payment of property
 taxes.  See S.C. Code Ann. §§ 12-51-40 to -170 (2000 &
 Supp. 2010).